**MAYFIELD HEIGHTS** (village) v
**GATES MILLS** (village)

Ohio Appeals, 8th Dist, Cuyahoga Co

Nos 13036-13039. Decided Oct 9, 1933

Spring, Sayre & Vail, Cleveland, for plaintiff in error.

Snyder, Thomsen, Ford, Seagrave & Roudebush, Cleveland, for defendant in error.

**OPINION**

By LEVINE, J.

There can be no dispute but that the sole authority to make a determination in the matter of apportionment of the inheritance taxes accruing upon the estate of a deceased person is vested in the Probate Court. The Common Pleas Court is not authorized in an original action to make such a determination. If upon such determination by the Probate Court, an appeal is had to the Common Pleas Court, or error proceedings are prosecuted to it from the order of the Probate Court, then, and only then, is the Common Pleas Court vested with authority to make a finding, as to the apportionment of the inheritance taxes.

When the Probate Court made its order on May 2, 1929, which found that the Village of Mayfield Heights was entitled to its portion of the inheritance tax of the estate of Matthew Andrews, no exceptions were taken, no appeal was prosecuted and no error proceedings were prosecuted to the Common Pleas Court. If the order of the Probate Court stood in its original form, the Common Pleas Court would be without power to change it in an original action. In other words if the original order of the Probate Court stood undisturbed, the present action brought by the Village of Gates Mills against the Village of Mayfield Heights for money had and received could not have been maintained. The only possible basis for the judgment entered in the present case by the Common Pleas Court would be that at a later date, to-wit, April 9, 1931, the Probate Court changed the former order and made a determination that the inheritance tax fund formerly awarded to the Village of Mayfield Heights is awarded to the Village of Gates Mills.

Two major questions are presented to us for our consideration. (1), was the order of the Probate Court entered on April 9, 1931, which declared its former determination in favor of Mayfield Heights Village to be a mistake and determined that the fund belonged to the Village of Gates Mills, made within a proper exercise of the judicial power vested in the Probate Court? In other words, is it a valid order or is it a mere nullity? (2), assuming that the order of the Probate Court entered April 9, 1931, was a valid order, could this action be maintained as for money had and received notwithstanding the fact that the money was paid by the county auditor and county treasurer to the Village of Mayfield Heights under the order of the Probate Court entered May 2, 1929, which made a determination in favor of the Village of Mayfield Heights? In other words, was the money received by the Village of Mayfield Heights under a mistake of law so as to bar this action?

The answer to the first question involves a discussion as to the power and jurisdiction of the Probate Court to modify or correct an entry more than two years after the same was made, without notice to the party substantially affected by the modified entry. In **Johnson v Johnson, 26 Oh St 357** it is held:

"It is the settled doctrine that the Ohio Probate Court cannot vacate its entries unless expressly authorized by statute."

**Davis v Davis, 11 Oh St 386** is to the same effect.

The new Probate Code expressly fixes definite terms for the Probate Court. Under its provisions a vacation of former entries is now possible in the Probate Court the same as in other courts. It must, of course, be in accordance with the usual rules, i.e., by motion during the same term and by petition after term. There is considerable confusion on the question as to whether or not the Probate Court under the former code had any fixed terms. As we gather from the various adjudicated cases the Probate Court under the former code had terms for adversary matters and no terms as to ex parte matters. The determination as to the apportionment of the inheritance tax which attaches to the estate of deceased persons, is an ex parte matter adjudicated by the Probate Court. There is no statutory authority enabling the Probate Court to change or modify the same at a subsequent term.

It is our opinion that under the old code the only method by which such order of determination of the apportionment of inheritance taxes made by the Probate Court could be attacked is by either appeal or error proceedings to the Common Pleas Court made within the time prescribed by law. The attempted order of April 9, 1931, which changed and modified the former entry made on May 2, 1929, by determining that the former order was a mistake and that the Village of Gates Mills is entitled to the inheritance taxes was, in our opinion made without any authority in law. It is a mere nullity, and as such has no legal effect. Especially is this true, in view of the fact that the subsequent entry of April 9, 1931 was made without any notice whatsoever to the Village of Mayfield Heights whose interests were substantially affected by the order.

The answer to question two, which assumes that the order of the Probate Court entered April 9, 1931, was a valid order, deals with the nature and essence of contracts denominated quasi contracts, and also with the question of whether or not an action like the action at bar can be maintained wherein the payment was made by authority of an order of a court of competent jurisdiction under the mandate of General Code of Ohio.

Quasi contracts are also called constructive contracts or contracts implied in law. In the leading Supreme Court case of **Columbus H. Valley & T. R. Company v Gaffney, 65 Oh St 104**, the court said:

"There is some confusion in the statement of the law applicable to what are frequently called implied contracts, arising from the fact that obligations generically different have been classed as such, not because of any real analogy, but because where the procedure of the common law prevails, by the adoption of a fiction in pleading—that of a promise where none in fact exists or can in reason be supposed to exist—the favorite remedy of implied assumpsit could be adopted. This was so in that large class of cases, where suit is brought to recover money paid by mistake or has been obtained by fraud. Here it is said the law implies a promise to repay the money, when it was well understood that the promise was a mere fiction, and in most cases without any foundation whatever in fact. The same practice was adopted where necessaries had been furnished an insane person or a neglected wife or child. In all these cases no true contract exists. They are, by many authors, termed quasi contracts, a term borrowed from the civil law. In all these cases no more is meant than that the law imposed a civil obligation on the defendant to restore money so obtained, or to compensate one who has furnished necessaries to his wife or child, where he has neglected his duty to provide for them, or, by reason of mental infirmity is unable to obtain them for himself."

In the case at bar the money was paid by the auditor and treasurer of Cuyahoga County to the Village of Mayfield Heights under a mandatory order of the Probate Court. When the village authorities received the money they committed no wrong. They had a right to rely upon the validity of the order and to apply it to village uses in accordance with the provisions of the General Code.

It is contended by counsel for the Village of Gates Mills that this money so paid to the Village of Mayfield Heights was under a mistake of fact as to the residence of Matthew Andrews at the time of his death. It is urged that when the Probate Court first determined that the Village of Mayfield Heights was entitled to the apportionment of the inheritance tax attaching to the estate of the deceased, it labored under a mistake of fact concerning the place of residence of the deceased. With this contention we do not agree.

While it may be true that the place of residence of the deceased was Gates Mills and not Mayfield Heights, and that the Probate Court was mistaken when it made

its first entry, yet it cannot be said that the money was paid under a mistake of fact. The most that can be claimed is that relying upon a mistaken assumption of facts the Probate Court made an erroneous legal order as to the apportionment of the inheritance tax. When the money was paid by the county auditor and county treasurer to the Village of Mayfield Heights they relied upon the legal conclusion reached by the Probate Court that the Village of Mayfield Heights is in law entitled to this apportionment of the inheritance tax.

When the village authorities of Mayfield Heights received the money they likewise relied upon the order of a court of competent. jurisdiction which apportioned to the village this money so received. There is no claim that there was any· fraud or misrepresentation on the part of the Village of Mayfield Heights. The. most that can be claimed is that the order which directed the payment of the money to the Village of Mayfield Heights was based upon a mistake.

The case of **Baer et v State ex Stanton, Prosecuting Attorney, etc., 111 Oh St 327,** deals in part with the question of defaults.

On February 4, 1920, the Ohio Legislature passed an act to amend §2252 GC to increase the salaries of Common Pleas judges of the state. Certain judges holding office at and prior to the passage of the amendment claimed the benefits of the statute and on June 1, 1920, after the law had gone into effect, demanded that the county auditor pay to them the amount of the increase. The auditor declined. Thereupon an action in mandamus was brought in the Common Pleas Court to compel such payment and upon hearing the court awarded the writ of mandamus and entered judg- ment granting the writ and found that the plaintiffs in said action were entitled to the increase in salary. Neither error or appeal was prosecuted from the judgment, and upon the same becoming final the county auditor paid the salaries from and after May 20, 1920, to and including April 16, 1921. On the latter date the prosecuting attorney believing that the former judgment in mandamus was erroneous, commenced an action to enjoin further payments, but did not in the same action seek to recover any of the payments already made. The injunction suit ran the gaunt- let of all the courts, and was finally heard in this court where the injunction was sus- tained. Thereafter the prosecuting attorney brought another action to recover all payments except the payment of June 1, 1920, and upon all these matters being set up in answers filed by the respective judges, demurrers to the answers were overruled. The Court of Appeals sustained the demur- rers and virtually ·held that the state is entitled to recover these payments made to the judges under the erroneous writ of mandamus. When the matter came to the Supreme Court, the court held in substance that by virtue of the judgment of the Common Pleas Court in a mandamus suit, which was neither reversed nor modified; the county auditor and the Common Pleas judges had a right to rely upon the legality of these payments and that any payments made by the auditor pursuant to the mandate of the court in that case were not only legal but authorized.

On page 331, the court said:

"This proceeding being a suit to recover moneys alleged to have been illegally paid, the legal question presented for determination is the legality or illegality of the action of the officer making the payment. It is difficult to see how the auditor could have done otherwise, until a further test of the matter had been made in a proper proceeding. In this case, if any judgment could be rendered against the Common Pleas judges, it follows that a like judgment could be rendered against the county auditor, and it would not be consonant with justice to compel him to restore to the county treasury moneys which he had paid out in exact compliance with the order of a court of competent jurisdiction, which required him to make the payments in the first instance."

It will be seen that in the case at bar the county auditor and the county treasurer were made parties defendant. When demurrers were filed by these officers to the present suit, the demurrers were sustained and the action was dismissed as to them. The court in making this order dismissing them from the action must have recognized the principle laid down in the last cited Supreme Court case to the effect that the officers had a right to rely upon an order of a court of competent jurisdiction in making the payment to the Village of Mayfield Heights. It is unquestionably likewise true that the authorities of Mayfield Heights Village had a right to rely upon the same order of a court of competent jurisdiction which awarded the money to it and to apply the money to the proper uses provided for by the General Code. The auditor and the treasurer of Cuyahoga

County stand on an equal footing with the Village of Mayfield Heights. If an action could be sustained against the Village of Mayfield Heights it could likewise be sustained against the officers who paid the money. The action of the trial court in dismissing the petition against the county auditor and the county treasurer and in awarding judgment against the Village of Mayfield Heights, is, to say the least, contradictory.

We are of the opinion that the court was correct when it sustained the demurrers filed by the county auditor and the county treasurer and in dismissing the petition as to them and that the court was in error when it awarded judgment against the Village of Mayfield Heights. Both the officers who paid the money and the Village of Mayfield Heights which received the money had the same right to rely upon the order of the Probate Court which is a court of competent jurisdiction in such matters, made on May 2, 1929, which awarded to it the amount received.

Upon these considerations the judgment of the Common Pleas Court is ordered reversed and final judgment is entered in favor of plaintiff in error.

LIEGHLEY, PJ, concurs in judgment.
McGILL, J, dissents.